ALFORD JONES, Petitioner v. ALVIN KELLER, Secretary of the Department of Correction, and SUSAN R. WHITE, Administrator of New Hanover Correctional Center, Respondents

No. 518PA09

(Filed 27 August 2010)

**1. Prisons and Prisoners— sentence reduction credits— authority of Department of Correction**

In a decision with a three-justice majority opinion and two justices concurring, it was held that the Department of Correction (DOC) acted within its statutory authority in limiting the application of good time, gain time, and merit time credits to the life sentence of an inmate convicted of first-degree murder between 8 April 1974 and 30 June 1978. Implicit in DOC's power to allow time for good behavior is the authority to determine the purposes for which that time is allowed; its application of its own regulations to accomplish the goal of releasing only those who are prepared and who can safely return to society is strictly administrative and outside the purview of the courts. An award of time by DOC need not be an all or nothing award for unlimited uses.

**2. Constitutional Law— due process—calculation of inmate's sentence reduction credits**

In a decision with a three-justice majority opinion and two justices concurring, there was no violation of the due process rights of an inmate (Jones) sentenced to life imprisonment for first-degree murder between 1974 and 1978 where the Department of Correction (DOC) withheld application of good time, gain time, and merit time from the calculation of the date for an unconditional release. When a liberty interest is created by a State, it follows that the State can control the contours of that interest within reasonable and constitutional limits. DOC's determination that Jones's immediate unconditional release would endanger public safety is a compelling State interest outweighing any limited due process liberty interest Jones may have.

**3. Constitutional Law— ex post facto—calculation of inmate's sentence reduction credits—no violation**

In a decision with a three-justice majority opinion and two justices concurring, the trial court correctly found that an inmate (Jones) had not suffered an *ex post facto* violation in the

**JONES v. KELLER**

[364 N.C. 249 (2010)]

Department of Correction's (DOC's) refusal to grant sentence reduction credits where Jones did not allege that any legislation or regulation altered the award of sentence reduction credits, nor did DOC change its interpretation of its applicable regulations.

**4. Constitutional Law— equal protection—inmate's sentence reduction credits**

In a decision with a three-justice majority opinion and two justices concurring, there was no equal protection violation in the Department of Correction's (DOC's) refusal to apply sentence reduction credits to a life sentence imposed for a first-degree murder between 1974 and 1978. The fact that the inmate (Jones) is serving a sentence for first-degree murder reasonably suggests that he presents a greater threat to society than prisoners convicted of other offenses, and DOC had a rational basis for denying good time, gain time, and merit time for the purposes of unconditional release, even though these same credits have been awarded for that purpose to other prisoners with determinate sentences.

Justice NEWBY concurring in the result.

Justice BRADY joins in this concurring opinion.

Justice TIMMONS-GOODSON dissenting.

Justice HUDSON joins in this dissenting opinion.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an opinion and order entered 14 December 2009 by Judge Ripley E. Rand in Superior Court, Wayne County, allowing petitioner's application for writ of habeas corpus and ordering his unconditional release from prison. Heard in the Supreme Court 16 February 2010.

*Staples S. Hughes, Appellate Defender, and Katherine Jane Allen, Benjamin Dowling-Sendor, Daniel R. Pollitt, and Daniel K. Shatz, Assistant Appellate Defenders, for petitioner-appellee.*

*Roy Cooper, Attorney General, by Tiare B. Smiley and Robert C. Montgomery, Special Deputy Attorneys General, for respondent-appellants State of North Carolina and North Carolina Department of Correction.*

*Elliot Pishko Morgan, P.A., by David Pishko, and Abrams & Abrams, P.A., by Margaret Abrams, for North Carolina Advocates for Justice, amicus curiae.*

JONES v. KELLER

[364 N.C. 249 (2010)]

EDMUNDS, Justice.

In this case we determine whether petitioner Alford Jones is entitled to habeas corpus relief from incarceration on the grounds that he has accumulated various credits against his sentence. Because we conclude that he is lawfully incarcerated, we reverse the decision of the superior court.

The record indicates that Jones was charged with the 6 January 1975 murder of William B. Turner, Sr. Jones was convicted on 19 March 1975 in Superior Court, Lenoir County, and sentenced to death. In an opinion dated 17 June 1976, this Court found no error in Jones's conviction and sentence. *State v. Jones*, 290 N.C. 292, 225 S.E.2d 549 (1976). On 1 September 1976, this Court entered an order vacating Jones's sentence of death, pursuant to the opinion of the Supreme Court of the United States in *Woodson v. North Carolina*, 428 U.S. 280, 49 L. Ed. 2d 944 (1976). Upon remand to the superior court, Jones was sentenced to a term of life imprisonment on 27 September 1976. As of 30 November 2009, Jones had accrued good time totaling 14,041 days, gain time totaling 2,146 days, and merit time totaling 1,745 days.

On 18 November 2009, Jones filed a petition for writ of habeas corpus in Superior Court, Wayne County. Jones's contention is that, when his good time, gain time, and merit time are credited to his life sentence, which is statutorily defined as a sentence of eighty years, he is entitled to unconditional release. After careful consideration, and relying on the opinion of the Court of Appeals in *State v. Bowden*, 193 N.C. App. 597, 668 S.E.2d 107 (2008), *disc. rev. improvidently allowed*, 363 N.C. 621, 683 S.E.2d 208 (2009), the superior court concluded that Jones was entitled to be awarded good time, gain time, and merit time by the Department of Correction (DOC) for all purposes, including calculation of Jones's date of unconditional release; that Jones had served the entirety of the sentence imposed in his case; and that Jones was entitled to relief. Accordingly, the trial court allowed Jones's petition for habeas corpus and ordered that Jones be released. This Court allowed DOC's motion for temporary stay and granted its petition for writ of certiorari.[1]

"Every person restrained of his liberty is entitled to a remedy to inquire into the lawfulness thereof, and to remove the restraint, if

---

1. For convenience, we will refer to respondents collectively as "DOC" rather than name the individual officers against whom the action was brought.

unlawful . . . ." N.C. Const. art. I, § 21 (codified at N.C.G.S. § 17-1 (2009)). Before this court, Jones again contends that he is unlawfully imprisoned because the life sentence imposed on him for first-degree murder committed in 1975 was defined as a term of eighty years and he has earned sufficient credits to have completed the sentence. Accordingly, Jones argues that he is entitled to immediate unconditional release. However, the record discloses that DOC allowed credits to Jones's sentence only for limited purposes that did not include calculating an unconditional release date. We conclude that the limitations imposed by DOC on those credits are statutorily and constitutionally permissible. Therefore, his detention is lawful.

**[1]** Jones is one of a group of prisoners, each of whom committed first-degree murder between 8 April 1974 and 30 June 1978 and were sentenced to life imprisonment, and it is this limited group that we consider in this opinion. At the time of petitioner's offense, the controlling statute provided that "[a] sentence of life imprisonment shall be considered as a sentence of imprisonment for a term of 80 years in the State's prison." N.C.G.S. § 14-2 (Cum. Supp. 1974). Although DOC interpreted a life sentence imposed under that statute to be an indeterminate sentence that would expire only upon an inmate's death, this statute unambiguously defined Jones's sentence as a determinate term of imprisonment for eighty years. *See Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) ("When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required.").

However, while section 14-2 sets the term of imprisonment, that statute is silent as to the administration of the sentence. Instead, the General Assembly delegated that responsibility to DOC. N.C.G.S. § 148-11 (Cum. Supp. 1974) ("The Secretary [of Correction] shall propose rules and regulations for the government of the State prison system, which shall become effective when approved by the Department of Correction."). The statutes further provide that "[t]he Secretary of Correction shall have control and custody of all prisoners serving sentence in the State prison system, and such prisoners shall be subject to all the rules and regulations legally adopted for the government thereof." *Id.* § 148-4 (Cum. Supp. 1974). Specifically, "[t]he rules and regulations for the government of the State prison system may contain provisions relating to grades of prisoners, rewards and privileges applicable to the several classifications of prisoners as an inducement to good conduct, allowances of time for good behavior,

the amount of cash, clothing, etc., to be awarded prisoners after their discharge or parole." *Id.* § 148-13 (1974).

Therefore, we must next consider the legality of the pertinent DOC regulations as they apply to petitioner. DOC is an arm of the executive branch of government. *Id.* § 143B-262(a) (2009). Under the doctrine of separation of powers, this Court has long held that when an agency of another branch of government is authorized to exercise regulatory power over the administration of prison sentences, we will defer to that authority to the extent the delegation is constitutional. *See Jernigan v. State,* 279 N.C. 556, 563, 184 S.E.2d 259, 265 (1971) ("This State is firmly committed to the doctrine that '[t]he legislative, executive, and supreme judicial powers of the State Government shall be forever separate and distinct from each other.'" (quoting N.C. Const. art. I, § 6 (1970) (alteration in original))).

> "The functions of the court in regard to the punishment of crimes are to determine the guilt or innocence of the accused, and, if that determination be one of guilt, then to pronounce the punishment or penalty prescribed by law. The execution of the sentence belongs to a different department of the government. The manner of executing the sentence and the mitigation of punishment are determined by the legislative department, and what the Legislature has determined in that regard must be put in force and effect by administrative officers."

*Id.* at 563-64, 184 S.E.2d at 265 (quoting *People v. Joyce,* 246 Ill. 124, 135, 92 N.E. 607, 612 (1910)); *see also Bacon v. Lee,* 353 N.C. 696, 716, 549 S.E.2d 840, 853-54, *cert. denied,* 533 U.S. 975, 150 L. Ed. 2d 804 (2001). "The punishment imposed in a particular case, if within statutory limits, is within the sound discretion of the presiding judge. The prison rules and regulations respecting rewards and privileges for good conduct ('good time') are strictly administrative and not judicial." *State v. Garris,* 265 N.C. 711, 712, 144 S.E.2d 901, 902 (1965) (per curiam) (citing N.C.G.S. § 148-13); *see also Goble v. Bounds,* 281 N.C. 307, 312, 188 S.E.2d 347, 350 (1972) (holding that a prisoner's complaint was appropriately dismissed by the superior court because questions whether the prisoner was entitled to parole, work release, or honor grade status "involve[] policy decisions which should be decided by the Department of Correction and the Board of Paroles," not the courts). Accordingly, as a general rule, the judiciary will not review the DOC's grant, forfeiture, or application of credits against a prisoner's sentence.

Nevertheless, DOC does not have carte blanche. "Of course, the responsibility for determining the limits of statutory grants of authority to an administrative agency is a judicial function for the courts to perform." *In re Appeal of Broad & Gales Creek Cmty. Ass'n*, 300 N.C. 267, 280, 266 S.E.2d 645, 654 (1980). Further, "[w]hen a government action is challenged as unconstitutional, the courts have a duty to determine whether that action exceeds constitutional limits." *Leandro v. State*, 346 N.C. 336, 345, 488 S.E.2d 249, 253 (1997).

The regulations promulgated by DOC have changed several times since Jones's incarceration. Essentially, DOC's regulations provide for good time, gain time, and merit time to be credited against an inmate's sentence. *See, e.g.*, Div. of Prisons, N.C. Dep't of Corr., Policy and Procedure, ch. B, §§ .0109-.0116 (Oct. 5, 2007) (hereinafter DOC Manual); 5 NCAC 2B .0101-.0103 (Feb. 1976, Mar. 1980, Sept. 1983). Gain time and merit time are awarded to prisoners who perform work or otherwise take some action to qualify, while good time is automatically awarded to every prisoner. *See, e.g.*, 5 NCAC 2B .0102-.0104. (Sept. 1983). Pursuant to the regulations, good time is subject to forfeiture, but only for reasons specified therein, such as major infractions, while gain time and merit time are not subject to forfeiture for misconduct. *See, e.g., id.* However, the distinctions between good time, gain time, and merit time, while of obvious importance to DOC and to inmates, are not material for our analysis as long as these credits are administered in a manner that satisfies statutory and constitutional requirements.

DOC argues, and the trial court found as fact, that "[t]he Department of Correction has never used good time, gain time, or merit time credits in the calculation of unconditional release dates for inmates who received sentences of life imprisonment." More specifically, DOC acknowledges that Jones earned gain and merit time, but states that these credits were not applied to reduce the time to be served on his sentence in any way. Accordingly, the inmate records maintained for Jones by DOC show his sentence as "99/99/99," a code that denotes a sentence of life imprisonment. These records also reflect a release date of "Life." DOC's position is that gain and merit time were only recorded in case Jones's sentence was commuted by a governor, at which time they would be applied to calculate a release date. DOC further contends that it awarded Jones good time solely for the purposes of allowing him to move to the least restrictive custody grade and to calculate his parole eligibility date, and not for the purpose of allowing Jones unconditional release. Thus, according to DOC, vari-

ous types of credits were awarded to Jones for different and limited purposes only, but no time was awarded for calculating a date of unconditional release. Because we defer to DOC's interpretation of its regulations, we need only consider whether DOC's interpretation that Jones's good time, gain time, and merit time credits were not awarded to him for purposes of unconditional release is statutorily and constitutionally permissible.

In making this determination, we first consider whether DOC's administration of good time, gain time, and merit time credits is within the statutory authority delegated it by the General Assembly. An "agency has those powers that are explicitly granted in the statute plus those powers that are ascertainable as inherent in the underlying policies of the statute, and that may be fairly implied from the statute." *In re Appeal of Cmty. Ass'n*, 300 N.C. at 280, 266 S.E.2d at 654-55 (citations omitted). At the time petitioner was sentenced, N.C.G.S. § 148-13 provided: "The rules and regulations for the government of the State prison system may contain provisions relating to grades of prisoners, rewards and privileges applicable to the several classifications of prisoners as an inducement to good conduct, allowances of time for good behavior . . . ." N.C.G.S. § 148-13 (1974).[2] In addition, at all relevant times N.C.G.S. § 143B-261 required DOC "to provide the necessary custody, supervision, and treatment to control and rehabilitate criminal offenders." *Id.* §§ 143B-261 (2009), 143B-261 (Cum. Supp. 1974).

Under the rationale of *In re Appeal of Cmty. Ass'n*, 300 N.C. at 280, 266 S.E.2d at 654-55, implicit in DOC's power to allow time for good behavior under section 148-13 is authority to determine the purposes for which that time is allowed. An award of time by DOC need not be an all-or-nothing award for unlimited uses. Discretion to determine the purposes for which time is awarded is consistent with such DOC goals as assuring that only those who can safely return to society are paroled or released and that they have been suitably prepared for outside life. *See* N.C.G.S. §§ 143B-261, 143B-262(a), 148-22 (2009). DOC's application of its own regulations to accomplish these ends is "strictly administrative" and outside the purview of the courts. *See*

---

2. Although section 148-13 has been amended numerous times since petitioner was sentenced, none of these amendments limited or mandated the purposes for which credits could be used. The section's current version requires the Secretary of Correction to adopt rules specifying the rates at which and circumstances under which time may be earned, with reference to other statutes that limit the total amount by which credits can reduce a sentence. N.C.G.S. § 148-13 (2009).

*Garris*, 265 N.C. at 712, 144 S.E.2d at 902. Accordingly, we conclude that DOC has acted within its statutory authority.

**[2]** We now turn to the question whether DOC's interpretation and implementation of its regulations are constitutional. Jones contends that DOC has violated his rights to due process and to equal protection. In addition, he argues that he has suffered an ex post facto violation. We address each of these claims.

The United States Supreme Court has held that "[l]iberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466, 74 L. Ed. 2d 675, 685 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 132 L. Ed. 2d 418 (1995). However, "due process is flexible and calls for such procedural protections as the particular situation demands. . . . [N]ot all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494 (1972). While a prisoner retains basic constitutional rights, *State v. Primes*, 314 N.C. 202, 208, 333 S.E.2d 278, 281 (1985), the Supreme Court has found that an inmate's liberty interests derived from the Fourteenth Amendment are limited, given the nature of incarceration, *Helms*, 459 U.S. at 467, 74 L. Ed. 2d at 685 ("[O]ur decisions have consistently refused to recognize more than the most basic liberty interests in prisoners."). Nevertheless, "a State may create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures." *Id.* at 469, 74 L. Ed. 2d at 686; *see also Sandin v. Conner*, 515 U.S. at 483-84, 132 L. Ed. 2d at 429. Prisoner benefits in the form of good time, gain time, and merit time arise from such statutes or regulations. *See Wolff v. McDonnell*, 418 U.S. 539, 557, 41 L. Ed. 2d 935, 951 (1974) (stating that "the Constitution itself does not guarantee good time credit for satisfactory behavior while in prison . . . [b]ut the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances").

The liberty interest alleged to be at issue here thus is one created by the State through its regulations. When a liberty interest is created by a State, it follows that the State can, within reasonable and constitutional limits, control the contours of the liberty interest it creates. In other words, the liberty interest created by the State through

its regulations may be limited to those particular aspects of an inmate's incarceration that fall within the purview of those regulations. DOC has interpreted its regulations as permitting the award of different types of time credits for certain purposes and has, in fact, awarded those credits to Jones for those purposes. On the record before this Court, DOC has taken no action against Jones for punitive reasons. Because Jones has received the awards to which he is entitled for the purposes for which he is entitled, he has not been denied credits in which he has a constitutionally protected liberty interest.

Petitioner contends, however, that his credits should be applied toward calculation of the date of his unconditional release. We disagree. As indicated by *Wolff*, *Helms*, and *Sandin*, Jones's liberty interest in good time, gain time, and merit time is limited. Thus, his liberty interest, if any, in having these credits used for the purpose of calculating his date of unconditional release is de minimis, particularly when contrasted with the State's compelling interest in keeping inmates incarcerated until they can be released with safety to themselves and to the public. The record indicates that Jones is eligible for parole and has received annual parole reviews, but that the Parole Commission consistently has declined to parole him. Accordingly, Jones has received the process that is due him as an inmate eligible for parole, when the State's corresponding interest is assuring that inmates are safely released under supervision. Assuming without deciding that DOC's procedures for determining parole adequately protect an inmate's due process rights to consideration for parole, those procedures are also adequate to preserve Jones's constitutional rights while still permitting the State to withhold application of Jones's good time, gain time, and merit time to the calculation of a date for his unconditional release. He has no State-created right to have his time credits used to calculate his eligibility for unconditional release. Jones's due process rights have not been violated.

This State interest in ensuring public safety is particularly pronounced when dealing with those convicted of first-degree murder. *See State v. Rorie*, 348 N.C. 266, 271, 500 S.E.2d 77, 80 (1998) (describing first-degree murder as "this most serious crime"), *superseded by statute*, *Act of May 8, 2001*, ch. 81, secs. 1, 3, 2001 N.C. *Sess. Laws 163, 163-65*, *on other grounds as recognized in State v. Defoe*, 364 N.C. 29, 691 S.E.2d 1 (2010); *see also Graham v. Florida*, —— U.S. ——, ——, 176 L. Ed. 2d 825, 842 (2010) (stating that "defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punish-

ment than are murderers"); *State v. Davis*, 290 N.C. 511, 548, 227 S.E.2d 97, 119-20 (1976) ("Murder in the first degree is obviously the most serious of the felonious homicides."). The State has a duty to seek to ensure public safety through the orderly release of prisoners who are both under adequate supervision and prepared for resuming life outside of confinement. *See* N.C.G.S. § 15A-1371(d) (2009) (setting forth conditions under which the Post-Release Supervision and Parole Commission may refuse to release a prisoner on parole). DOC's determination that Jones's immediate unconditional release would endanger public safety in any respect is a compelling State interest outweighing any limited due process liberty interest Jones may have in application of his good time, gain time, and merit time credits to his unconditional release.

In addressing Jones's contentions, we are aware that DOC's regulations currently define good time, gain time, and merit time as "[t]ime credits applied to an inmate's sentence that reduce[] the amount of time to be served" and state that "[g]ood time is sentence reduction credit awarded, at the rate of one day deducted for each day served in custody for good behavior and/or without an infraction of inmate conduct rules." DOC Manual ch. B, § .0110(a), (f) (Oct. 5, 2007). These regulations were promulgated by DOC years after Jones was sentenced, *see* 5 NCAC 2B .0110(6) (Apr. 1995); *id.* 2B .0102 (Sept. 1983), when no challenge had been raised to the State's position that those sentenced to life pursuant to the version of section 14-2 in effect between 8 April 1974 and 30 June 1978 had been given an indeterminate sentence. Except for this limited time period, life sentences unquestionably were and still are indeterminate sentences. No regulation explicitly provides that credits are to be used to calculate an unconditional release date, and DOC asserts that it never considered that these regulations applied to Jones or other inmates similarly situated for the purpose of calculating an unconditional release date. Because the regulations were understood to be inapplicable for that purpose, the State did not fully prepare Jones for unconditional release. In light of the compelling State interest in maintaining public safety, we conclude that these regulations do not require that DOC apply time credits for purposes of unconditional release to those who committed first-degree murder during the 8 April 1974 through 30 June 1978 time frame and were sentenced to life imprisonment.

[3] We next consider Jones's ex post facto argument. He contends that DOC's interpretation of its regulations has retroactively increased the punishment for his offense after the offense was com-

mitted. The trial court concluded that failing to use good time, gain time, and merit time credits to calculate an unconditional release date for Jones was not an ex post facto violation.

The constitutions of both the United States and North Carolina prohibit the enactment of ex post facto laws. U.S. Const. art. I, § 10, cl. 1 ("No state shall . . . pass any . . . ex post facto law . . . ."); N.C. Const. art. I, § 16 ("Retrospective laws, punishing acts committed before the existence of such laws and by them only declared criminal, are oppressive, unjust, and incompatible with liberty, and therefore no ex post facto law shall be enacted."). The federal and North Carolina constitutional ex post facto provisions are analyzed "under the same definition." *State v. Wiley*, 355 N.C. 592, 625, 565 S.E.2d 22, 45 (2002), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003). Most pertinently here, the ex post facto prohibition applies to: " 'Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed.' " *Id.* (quoting *Collins v. Youngblood*, 497 U.S. 37, 42, 111 L. Ed. 2d 30, 38-39 (1990) (quoting *Calder v. Bull*, 3 U.S. 386, 390, 1 L. Ed. 648, 650 (1798))).

Legislation that retroactively alters sentence reduction credits in effect at the time a crime was committed can be an unconstitutional ex post facto law. *See Weaver v. Graham*, 450 U.S. 24, 25, 36, 67 L. Ed. 2d 17, 20-21, 28 (1981) (finding an ex post facto violation in Florida legislation that altered the availability of good time sentence reduction from a convicted prisoner's sentence). However, Jones does not allege that any legislation or regulation has altered the award of sentence reduction credits. Nor has DOC changed its interpretation of its applicable regulations. Accordingly, the superior court correctly found that Jones has suffered no ex post facto violation.

[4] Finally, Jones argues that DOC's denial of good time, gain time, and merit time for the purpose of calculating an unconditional release date violates his right to equal protection of the law. Jones contends that his equal protection right prohibits the State from treating inmates who committed first-degree murder between 8 April 1974 and 30 June 1978 and were sentenced to life imprisonment under N.C.G.S. § 14-2, who are thus serving determinate sentences, differently from other inmates serving determinate sentences. "When a governmental classification does not burden the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the lower tier of equal protection analy-

sis requiring that the classification be made upon a rational basis must be applied." *White v. Pate*, 308 N.C. 759, 766, 304 S.E.2d 199, 204 (1983); *see also Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319, 125 L. Ed. 2d 257, 270 (1993). Thus, "equal protection of the laws is not denied by a statute prescribing the punishment to be inflicted on a person convicted of crime unless it prescribes different punishment for the same acts committed under the same circumstances by persons in like situation." *State v. Benton*, 276 N.C. 641, 660, 174 S.E.2d 793, 805 (1970), *quoted in State v. Dunlap*, 298 N.C. 725, 735-36, 259 S.E.2d 893, 899 (1979).

Jones was convicted of a different crime than others serving determinate sentences under statutes other than N.C.G.S. § 14-2, even if the sentences of some of those others are for eighty years or even longer (perhaps due to the imposition of consecutive sentences). The fact that Jones is serving a sentence for first-degree murder reasonably suggests that he presents a greater threat to society than prisoners convicted of other offenses. Thus, DOC has a rational basis for denying petitioner good time, gain time, and merit time for the purposes of unconditional release, even though these same credits have been awarded for that purpose to other prisoners with determinate sentences.

Accordingly, we hold that Jones is legally incarcerated. The holding of the trial court to the contrary is reversed.

REVERSED.

Justice NEWBY concurring in the result.

The question at the heart of this appeal is whether the General Assembly intended to eliminate life sentences by legislation enacted in 1974. A thorough analysis of that legislation reveals that the General Assembly never abolished life sentences. In fact, the legislature exhibited an affirmative intent to retain life imprisonment as a special sentence status. Because the administration of the relevant statutory mandates by the Department of Correction ("DOC") has been in consistent harmony with this legislative intent and with inmates' constitutional rights, it is not the place of the courts to overturn DOC's policy of treating life inmates differently from other prisoners.

I agree with the majority's ultimate holding that Jones is lawfully incarcerated. More specifically, I concur in the conclusion that DOC

has acted in accordance with its statutory grant of authority, and I agree further that Jones does not have any due process liberty interest in having his good time, gain time, or merit time credits applied to his sentence for purposes of calculating an unconditional release date. I write separately to express my belief that this latter conclusion is true for all inmates sentenced to life imprisonment for crimes committed between 8 April 1974 and 30 June 1978. I also write to provide a broader response to Jones's contention that his continued incarceration represents a violation of his right to equal protection of the laws.

As noted by the majority, the trial court found as fact that "[t]he Department of Correction has never used good time, gain time, or merit time credits in the calculation of unconditional release dates *for inmates who received sentences of life imprisonment.*" (Emphasis added.) This finding was based on competent testimony from respondent Alvin Keller, Secretary of DOC, and from. Teresa O'Brien, an employee in DOC's Combined Records Section.[3] "[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary." *Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) (alterations in original) (citations and internal quotation marks omitted). Thus, this Court is bound by the finding that DOC has never applied good time, gain time, or merit time credits to calculate an unconditional release date for any inmate sentenced to life imprisonment.

Moreover, the majority correctly concludes that neither the General Statutes nor DOC's regulations give Jones any right to have his time credits applied for purposes of unconditional release. In general, we accord significant deference to the manner in which a statute is interpreted by the executive agency charged with enforcing it, *Frye Reg'l Med. Ctr., Inc. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999) (citation omitted), and we give *controlling* weight to an agency's interpretation of its own regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation[s],"

---

3. Respondent Keller testified that DOC's regulations have "never been understood to require awards of gain time towards unconditional release of inmates with life sentences" and that "good and gain time credits have never been applied to calculate an unconditional release date for any inmate with a life sentence imposed for a crime committed before 1 July 1981, which includes the *Bowden* group of inmates." Ms. O'Brien testified: "Good behavior credits, which include good, gain, and merit time, have never been applied to life sentences in order to calculate an expiration or unconditional release date."

*Morrell v. Flaherty*, 338 N.C. 230, 238, 449 S.E.2d 175, 180 (1994) (citations and internal quotation marks omitted), *cert. denied*, 515 U.S. 1122, 115 S. Ct. 2278, 132 L. Ed. 2d 282 (1995). DOC has never read the relevant statutes and regulations as requiring application of time credits to calculate unconditional release dates for life inmates. Given that those statutes and regulations make no attempt to set forth the specific purposes for which time credits are to be applied, DOC's interpretations are reasonable and worthy of deference so long as they are constitutionally sound.

Jones contends that he has a due process liberty interest in having his good time, gain time, and merit time credits applied for unconditional release purposes. However, as demonstrated above, the relevant statutes and regulations do not give inmates sentenced to life imprisonment any such right, nor has DOC vested life inmates with such a right through its manner of administering those statutes and regulations. Thus, life inmates like Jones can claim no liberty interest in having time credits applied to calculate their unconditional release dates.

Jones argues further: "The unequal treatment of Mr. Jones' sentence, *and that of other inmates in the* Bowden-*class*, amounts to a classic violation of equal protection laws." (Emphasis added.) The "*Bowden*-class" of inmates to which Jones refers is the group of inmates sentenced to life imprisonment for crimes committed between 8 April 1974 and 30 June 1978. Jones goes on to contend that "[his] *life sentence* is identical to a term of 80-years." (Emphasis added.) In other words, Jones argues that life sentences imposed under the 1974 version of section 14-2 are indistinguishable from ordinary term-of-years sentences and that DOC has, therefore, violated equal protection by treating his class of life inmates differently from term-of-years inmates. While I do not disagree with the majority's equal protection analysis, I believe there is a more direct way to respond to Jones's precise argument.

Jones's contention that his class of life inmates is no different from term-of-years inmates ignores the fact that section 14-2 does not abolish life sentences or render them indistinguishable from ordinary term-of-years sentences. Rather, in providing a definition for "[a] sentence of life imprisonment," section 14-2 explicitly retains life imprisonment as a special sentence status. N.C.G.S. § 14-2 (Cum. Supp. 1974). Moreover, the session law that gave rise to section 14-2 utilizes the sentence status of life imprisonment eight times, Act of Apr. 8, 1974, ch. 1201, 1973 N.C. Sess. Laws 323, and in six of those

instances the General Assembly set forth the life sentence as an available punishment for a specific crime, *id.*, secs. 1-4, 7, at 323-24. This continued use of the distinct sentence status of life imprison-. ment is hardly the manner in which one would expect the legislature to abolish life sentences or convert them to term-of-years sentences for all purposes.

Based on the General Assembly's intent to continue distinguishing life sentences (even those with an unconditional release date of eighty years) from term-of-years sentences, Jones is similarly situated to other life inmates, not to term-of-years inmates. As the trial court found, DOC has never used time credits to calculate unconditional release dates for inmates sentenced to life imprisonment. Thus, DOC has not subjected Jones to disparate treatment in comparison with other similarly situated inmates. Jones and other inmates sentenced to life imprisonment have been treated differently from ordinary term-of-years inmates, but the Supreme Court of the United States has said that if a law involving disparate treatment does not infringe upon a fundamental right or target a suspect class, the classification is permissible as long as it bears a rational relation to some legitimate end. *Heller v. Doe*, 509 U.S. 312, 319-20, 113 S. Ct. 2637, 2642, 125 L. Ed. 2d 257, 270 (1993) (citations omitted). Jones has not demonstrated any right, let alone a fundamental right, to have his time credits applied to his sentence for all possible purposes, nor has he shown that inmates sentenced to life imprisonment are a suspect class. Because DOC's disparate treatment of life inmates relative to term-of-years inmates is rationally related to the legitimate State ends of punishing heinous crimes with greater severity and ensuring public safety, Jones's equal protection claim fails.

Having stated the foregoing, I concur in the result of the majority's opinion.

Justice BRADY joins in this concurring opinion.

Justice TIMMONS-GOODSON dissenting.

The rule of law, consistency, and fundamental fairness are not advanced by today's decision allowing the Department of Correction (DOC) to withhold inmate Alford Jones's accumulated sentence reduction credits. This decision violates the DOC's own regulations and policies, Jones's constitutional rights, and the doctrine of separation of powers. And by doing so, I fear that a cornerstone of our legal system, the writ of habeas corpus, is devalued. The undisputed·

record reflects that Jones has fully served his term of imprisonment and is thereby entitled to immediate unconditional release. The decision to the contrary offends all notions of fundamental fairness. I therefore respectfully dissent.

This case arises out of a mistake of law by the DOC that it now seeks to rectify through unwritten, retrospective policy pronouncements some thirty-five years after the fact. The DOC says the department believed that the "life" sentence imposed upon Jones was a sentence of natural life rather than the eighty-year sentence he was actually serving. The DOC awarded Jones sentence reduction credits but putatively believed that those credits would only shorten Jones's sentence in the event of a commutation by the governor. Expecting that the sentence reduction credits earned by Jones would never be utilized, the DOC continued to award Jones sentence reduction credits pursuant to DOC policies and regulations without placing any limitations upon the use of such credits.

This Court's 1978 decisions in *State v. Richardson* and *State v. Williams* cast doubt on the grounds upon which the DOC based its belief that N.C.G.S. § 14-2 meant natural life rather than a determinate eighty-year sentence. The nature and timing of the decisions put the DOC on notice that sentence reduction credits for Jones should diminish his eighty-year sentence. In *Richardson*, this court determined that "[a] sentence of life imprisonment shall be considered as a sentence of imprisonment for a term of 80 years" and that pre-conviction incarceration credits should be applied to reduce the defendant's 100 year sentence, which included an eighty-year life sentence. *State v. Richardson*, 295 N.C. 309, 318-20, 245 S.E.2d 754, 760-61 (1978). Similarly, in *Williams*, this Court upheld the defendant's sentence of 300 years in prison, which was comprised in part by three consecutive eighty-year life sentences. *State v. Williams*, 295 N.C. 655, 679-80, 249 S.E.2d 709, 725 (1978). In neither case did the State, under which the DOC's interests are represented, argue that the proper interpretation of a life sentence under section 14-2 is natural life.

Despite our decisions in *Richardson* and *Williams*, it was only after inmate Bobby Bowden filed a writ of habeas corpus—contesting the lawfulness of his continued incarceration and requesting immediate release from his sentence—that the DOC altered the nature of the sentence reduction credits awarded to Jones, Bowden, and other similarly situated inmates. *See State v. Bowden*, 193 N.C. App. 597, 598, 668 S.E.2d 107, 108 (2008), *disc. rev. improvidently*

*allowed*, 363 N.C. 621, 683 S.E.2d 208 (2009). Specifically, the Court of Appeals observed that the DOC's records for Bowden initially "indicated that all of [his] good conduct time, merit time, and gain time credits had been applied to his sentence." *Id.* at 598, 668 S.E.2d at 108. Curiously, and "for reasons unclear to [the Court of Appeals], the Department of Correction later retroactively changed the status of [Bowden's] sentence reduction credits from 'applied' to 'pending.' " *Id.* Subsequent statements of policy by the DOC and other executive branch officials also cut against the letter of the DOC's regulations for awarding sentence reduction credits.

The question for this Court is therefore whether the DOC may now legally withhold the credits it has awarded Jones. In order to answer this question, I first examine the nature of Jones's interest in his sentence reduction credits.

The United States Supreme Court has explained that, although an inmate's "rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56, 41 L. Ed. 2d 935, 950 (1974); *see also State v. Primes*, 314 N.C. 202, 208, 333 S.E.2d 278, 281 (1985) (stating that "basic constitutional rights adhere inside as well as outside the prison walls" (citations omitted)); *Goble v. Bounds*, 281 N.C. 307, 311, 188 S.E.2d 347, 349 (1972) (affirming that "a prisoner takes with him into the prison certain rights which may not be denied him") (citing *Lee v. Washington*, 390 U.S. 333, 19 L. Ed. 2d 1212 (1968) (per curiam)). Prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff*, 418 U.S. at 556, 41 L. Ed. 2d at 951 (citations omitted). The United States Supreme Court has specifically recognized that prisoners have a protected liberty interest in avoiding the withdrawal of sentence reduction credits awarded pursuant to state laws or policies. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 221, 162 L. Ed. 2d 174, 189 (2005) (noting that a prisoner's liberty interest "may arise from an expectation or interest created by state laws or policies" and that prisoners have a "liberty interest in avoiding withdrawal of [a] state-created system of good-time credits" (citing *Wolff*, 418 U.S. at 556-58, 41 L. Ed. 2d at 950-51)); *Weaver v. Graham*, 450 U.S. 24, 25, 35-36, 67 L. Ed. 2d 17, 20-21, 27-28 (1981) (determining that a statutory alteration reducing the availability of gain time for inmates' good conduct violated the prohibition against *ex post facto* laws and was

therefore unconstitutional). Thus, when the State creates "a right to a shortened prison sentence through the accumulation of credits for good behavior," the prisoner has a cognizable liberty interest in the credits that cannot be "arbitrarily abrogated." *Wolff*, 418 U.S. at 557, 41 L. Ed. 2d at 951.

In the instant case the General Assembly authorized prison rules and regulations granting "rewards and privileges" to inmates "as an inducement to good conduct." N.C.G.S. § 148-13 (1974). The General Assembly thereby delegated to the Secretary of Correction the authority to promulgate regulations granting sentence reduction credits. At all relevant times, the statutory authorization to issue regulations has been the only means by which the Secretary of Correction could exercise discretion regarding sentence reduction credits. Accordingly, the Secretary of Correction promulgated regulations awarding good, gain, and merit time to inmates, including Jones, provided the inmates behaved and participated in the requisite programs. In the years since then, Jones has continued to earn sentence reduction credits pursuant to DOC regulations, policies, and procedures. Jones therefore has a protected liberty interest in the sentence reduction credits which were created and awarded to him by the State, through the Secretary of Correction, pursuant to State-created policies, procedures and regulations, that cannot be "arbitrarily abrogated." *Wolff*, 418 U.S. at 557, 41 L. Ed. 2d at 951.

Indeed, at oral argument counsel for the DOC agreed that if sentence reduction credits were in fact "awarded" to Jones, he would have a corresponding liberty interest in those credits under *Wolff* that could not be denied absent procedural due process. However, counsel for the DOC denied that the sentence reduction credits had been awarded to Jones, asserting instead that the credits had only been "stored." This assertion flatly contradicts the trial court's finding that Jones "has been awarded good time, gain time, and merit time credits by the Department of Correction based on his conduct and his participation in the [work release and other related] programs." The DOC has not challenged any of the trial court's findings of fact and these findings are therefore binding.

Having determined that Jones has a protected liberty interest in the sentence reduction credits awarded him pursuant to State-created regulations and policies, I now consider whether the DOC may legally withhold the sentence reduction credits earned by Jones. The DOC essentially argues that because it has fundamentally misapprehended the nature of Jones's sentence for the past thirty years, it

**JONES v. KELLER**

[364 N.C. 249 (2010)]

should be allowed to perpetuate its mistake and retroactively elimi-
nate the sentence reduction credits awarded to Jones. This argument
flies in the face of bedrock principles securing fundamental fairness
in the criminal justice system, including due process and the prohibi-
tion against *ex post facto* laws.

As the majority explains, the United States Supreme Court has
recognized that a prisoner's liberty interest is constitutionally pro-
tected by procedural due process when that liberty interest is created
by the State. *Wolff*, 418 U.S. at 555-58, 41 L. Ed. at 950-52. The Court
held in *Wolff* that a prisoner's liberty interest "has real substance and
is sufficiently embraced within Fourteenth Amendment 'liberty' to
entitle him to those minimum procedures appropriate under the cir-
cumstances and required by the Due Process Clause to insure that
the State-created right is not arbitrarily abrogated." *Id.* at 557, 41
L. Ed. at 951. Accordingly, Jones's liberty interest in the sentence
reduction credits cannot be diminished by the DOC without giving an
adequate level of process. Yet the DOC provided no process whatso-
ever before attempting to change the applicability of Jones's good
time, gain time, and merit time credits. The majority effectively con-
cedes that some process is due by suggesting that the parole process
is sufficient. However, the opinion leaves unexplained how the dis-
cretionary review of parole is relevant in a discussion of sentence
reduction credits, a constitutionally protected interest. In the end, by
providing no process prior to withholding Jones's sentence reduction
credits, the DOC violated Jones's constitutional right to procedural
due process.

. Moreover, the DOC has no authority to impose a term of impris-
onment other than the sentence handed down by the trial court. *See
State v. Allen*, 346 N.C. 731, 737, 488 S.E.2d 188, 191 (1997) (stating
that "[t]his Court has already settled that the General Assembly alone
prescribes the maximum and minimum punishment which can be
imposed on those convicted of crimes" (citation omitted)). The trial
court sentenced Jones to a term of life imprisonment, which at the
time was defined as a term of eighty years. The DOC is, and was at all
times, therefore obligated to treat Jones's sentence as a determinate
sentence of eighty years. To do otherwise violates the doctrine of
separation of powers. *See Jernigan v. State*, 279 N.C. 556, 564, 184
S.E.2d 259, 265 (1971) (" 'The manner of executing the sentence and
the mitigation of punishment are determined by the legislative
department, and what the Legislature has determined in that regard
must be put in force and effect by administrative officers.' " (quoting

*People v. Joyce*, 246 Ill. 124, 135, 92 N.E. 607, 612 (1910))). By defining a life sentence as eighty years, the General Assembly intended Jones to serve an eighty-year determinate sentence. As an inmate serving an eighty-year determinate sentence, like other inmates serving determinate sentences, Jones was entitled under DOC regulations and policies to earn sentence reduction credits for the purpose of shortening his sentence. The DOC's refusal to recognize the sentence reduction credits awarded to Jones ignores the will and intent of the General Assembly in defining a life sentence as eighty years and in enacting legislation authorizing sentence reduction credits. I would therefore hold that the DOC is without authority to withhold the sentence reduction credits it awarded to Jones.

The majority concludes, however, that Jones is not entitled to the benefit of the sentence reduction credits he has earned. I note that the majority accepts the following facts: (1) Jones was sentenced to a determinate term of imprisonment of eighty years. (2) While incarcerated, Jones earned good time, gain time, and merit time credits (sentence reduction credits) pursuant to DOC regulations and policies. (3) As of 30 November 2009, Jones's good time credit totaled 14,041 days; his gain time credits totaled 2146 days; and his merit time credit totaled 1745 days. (4) Under DOC regulations and policies, gain time credits and merit time credits are not subject to forfeiture. (5) Good time credits may be forfeited, but only for reasons specified in the DOC regulations, such as major infractions. (6) Under DOC regulations, good time, gain time, and merit time credits operate to reduce the length of an inmate's sentence. (7) The DOC regulations do not specify or limit the purposes for which sentence reduction credits are awarded.

Despite acknowledgment of these facts, the decision countenances the DOC's retrospective and unreasonable interpretation of its regulations, thereby abdicating the judiciary's solemn duty to check arbitrary acts by the other branches. *See Long v. Watts*, 183 N.C. 99, 113, 110 S.E. 765, 768 (1922) (stating that an independent judiciary must be secure against, *inter alia*, "the arbitrary authority of the administrative heads of government"). In addition, the majority fails to recognize that the DOC's position is not based upon any "interpretation" of its regulations. Rather, the DOC's position contravenes the regulations themselves. Nothing in any relevant provision of the North Carolina General Statutes, the North Carolina Administrative Code, the DOC's policies, procedures, or regulations, or North Carolina case law precedent specifically authorizes the

**JONES v. KELLER**

[364 N.C. 249 (2010)]

Secretary of Correction to apply the good time, gain time, merit time, or any other awarded credits only for certain purposes and not for others. Simply put, the DOC offers no textual support for its position and neither does the majority.

To the contrary, the DOC plainly sets forth the procedures by which Jones has earned sentence reduction credits. DOC policies and procedures establish "the rules and methods for computing sentence reduction credits in the form of Good Time for satisfactory behavior, Gain and Earned Time for participation in work or program assignments, and Meritorious Time for exemplary acts or for working under emergency conditions, and working overtime or for program achievement." Div. of Prisons, N.C. Dep't of Corr., Policy and Procedures ch. B, § .0109 (Oct. 5, 2007). The DOC defines "Sentence Reduction Credits" as "[t]ime credits applied to an inmate's sentence that reduces the amount of time to be served. These credits are called Good Time, Gain Time, Earned Time and Meritorious Time." *Id.*, § .0110(f). The provisions do not exclude Jones from earning sentence reduction credits. Notably, the DOC specifically excludes seven categories of inmates from earning good time and gain time, *id.*, §§ .0111(d), .0112(c), yet no exception applies to inmates that received life sentences for offenses committed between 8 April 1974 and 30 June 1978. Nevertheless, the majority now attempts to create and to apply an ad hoc exception to Jones. The DOC's position unjustifiably requires this Court to read into the applicable provisions limitations that are noticeably absent and that run counter to the plain and unambiguous language of the provisions. *See Britt v. N.C. Sheriffs' Educ. & Training Standards Comm'n*, 348 N.C. 573, 576, 501 S.E.2d 75, 77 (1998) ("When the language of regulations is clear and unambiguous, there is no room for judicial construction, and courts must give the regulations their plain meaning."). Because there is no support for the DOC's position in the written regulations and policies—and with all support being to the contrary—the DOC presents no "interpretation of its regulations" to which this Court may defer.

Despite the lack of textual support for the DOC's position, the majority nonetheless reasons that the DOC has "implicit authority" to determine the purposes for which sentence reduction credits may be awarded and posits that "an award of time by [the] DOC need not be an all-or-nothing award for unlimited uses." I agree that the Secretary of Correction is fully authorized to "issue regulations" and "adopt rules" limiting the purposes for which sentence reduction credits

may be applied. N.C.G.S. § 148-13 (2009). However, the Secretary of Correction has not done so in this case. Instead, the Secretary has issued policies, procedures, and regulations regarding the award of sentence reduction credits, under which Jones accrued credits for good time, gain time, and merit time based on his participation in work, study, and other programs. The DOC concedes that the Secretary's discretion is exercised through the DOC regulations. These provisions and regulations do not permit the Secretary to withhold or withdraw the sentence reduction credits already awarded to Jones, nor do they limit the purposes for which the credits may be applied. And while the DOC need not issue a regulation or rule for every minor detail of prison administration and must be allowed a certain degree of flexibility in interpreting its rules, the DOC, should it desire to limit the purposes for which sentence reduction credits may be applied, must articulate these limitations in the form of written rules, regulations, or policies.

DOC regulations involving sentence reduction credits are not minor. Whether an inmate has fully served his sentence and is entitled to release from imprisonment is a question deeply implicating fundamental constitutional rights. *See Wolff*, 418 U.S. at 555-58, 41 L. Ed. 2d at 950-52. The majority asserts that Jones's liberty interest in his sentence reduction credits is "de minimis" and that the State may "control the contours of the liberty interest it creates." The majority cites no authority for this pronouncement, which conflicts with the United States Supreme Court's decisions in *Wolff* and *Weaver*. Accordingly, this Court should reject the DOC's unwritten, retrospective "interpretation," which is contrary to Jones's liberty interest and the unambiguous letter of the relevant regulations and statutes.

Jones does not challenge the DOC's authority to formulate rules and regulations. He asks only that the DOC abide by them. This Court has recognized that an inmate may "earn" a "right to honor grade status" and is " 'entitled' " to release after " 'full service of his sentence *less good time earned* during incarceration.' " *Goble*, 281 N.C. at 311, 188 S.E.2d at 349-50 (emphasis added) (quoting *Menechino v. Oswald*, 430 F.2d 403, 408 2d Cir. 1970 (1970), *cert. denied*, 400 U.S. 1023, 27 L. Ed. 2d 635 (1971)). Jones has earned his sentence reduction credits in accordance with DOC policies and regulations and is now entitled to release. I do not believe that a decision by this Court requiring the DOC to follow its own policies and procedures—which the Secretary of Correction is free to alter at any time—usurps or interferes with the power or authority of the DOC.

## JONES v. KELLER

[364 N.C. 249 (2010)]

Today's decision offends common notions of fundamental fairness. For thirty years, Jones has behaved well, participated in prison work release and study programs, and otherwise performed the conditions necessary to earn sentence reduction credits. Now the State refuses to grant Jones the benefit of his efforts. And although the majority claims the DOC does not have "carte blanche" over the administration of prisoners' sentences, the rejection of Jones's fundamental liberty interests in favor of the DOC's "interpretation" of an unwritten and heretofore unarticulated practice is a departure from established principles. One wonders what other unwritten policies the DOC operates under and whether they, too, are supported by law. Today's decision condones spontaneous rule-making by the DOC that targets individuals retroactively, thereby abdicating this Court's role as a protector of Constitutional liberty rights.

This is a hard case. The lives of the victim and his family have been forever changed by Jones's criminal conduct. Public attention has been excited by the possibility of release of those previously committed to life sentences. The late United States Supreme Court Justice Oliver Wendell Holmes appropriately cautioned against allowing "immediate interests [to] exercise a kind of hydraulic pressure which makes what was previously clear seem doubtful, and before which even well settled principles of law will bend." *N. Securities Co. v. U.S.*, 193 U.S. 197, 400-01, 48 L. Ed. 679, 726 (1904) (Holmes, J., dissenting). Many would argue that the breaking point has been reached in this case.

Because withholding Jones's accumulated sentence reduction credits condones spontaneous rule-making by the DOC and violates the DOC's own regulations, Jones's constitutional rights, and the doctrine of separation of powers, I would affirm the order of the trial court allowing Jones's petition for writ of habeas corpus.

Justice HUDSON joins in this dissenting opinion.