Justice HUDSON
dissenting.
The majority holds that Bobby Bowden must remain incarcerated, despite the unchallenged fact that he has accumulated good time, gain time, and merit time credits which, if applied, would have entitled him to release in October 2009. Here I conclude that, unlike in Jones v. Keller, 364 N.C. 249, 698 S.E.2d49 (2010), cert. denied,_ U.S. _, 179 L. Ed. 2d 935 (2011), the North Carolina Department of Correction (“DOC”) actually applied the prison credits to defendant Bowden’s record, and it may not now take those credits away without violating his constitutional rights. Accordingly, I respectfully dissent.
The majority bases its decision primarily on this Court’s opinion in Jones v. Keller, 364 N.C. 249, 698 S.E.2d 49. However, in my view, Jones does not control the outcome of this case. Central to the outcome in Jones was the trial court’s factual finding, based on competent evidence, that the DOC had not actually applied credits to the defendant’s account for purposes of calculating his unconditional release date. If it had done so, clear and binding precedent from the Supreme Court of the United States would have required his release on the date as calculated there. Here, however, the trial court found as fact that credits had been applied for this purpose — a factual finding of paramount importance which the majority has largely ignored. Because we are bound on appeal by that finding, just as we are bound by the Supreme Court’s interpretations of federal constitutional law, I conclude that defendant Bowden was entitled to release in October 2009 and that his continued detention violates the United States Constitution.
To begin with, the majority opinion conflicts with binding precedent from the Supreme Court of the United States. As it did in Jones, *687 the majority characterizes the liberty interest at stake here as “de minimis.” State v. Bowden _ N.C. _, _, _ S.E.2d __, _(2014) (“This Court concluded that a prisoner’s de minimis liberty interest in having his various credits applied towards his desired purpose of unconditional release must be balanced against the State’s corresponding and compelling interest in public safety.”); Jones, 364 N.C. at 257, 698 S.E.2d at 56 (“Thus, [the defendant’s] liberty interest, if any, in having these credits used for the purpose of calculating his date of unconditional release is de minimis, particularly when contrasted with the State’s compelling interest in keeping inmates incarcerated until they can be released with safety to themselves and to the public.”). From this premise, it would seem naturally to follow that such credits are entitled to little, if any, constitutional protection.
But this is not what the Supreme Court of the United States has said. In Wolff v. McDonnell, 418 U.S. 539, 41 L. Ed. 2d 935 (1974), the Court addressed whether good time credits authorized by state statute were protected by the Due Process Clause of the Fourteenth Amendment. Id. at 553-58, 41 L. Ed. 2d at 949-52. The Court opined:
We also reject the assertion of the State that whatever may be true of the Due Process Clause [of the Fourteenth Amendment] in general or of other rights protected by that Clause against state infringement, the interest of prisoners in disciplinary procedures is not included in that “liberty” protected by the Fourteenth Amendment. It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison----But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner’s interest has real substance and is sufficiently embraced within Fourteenth Amendment “liberty” to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.
Id. at 556-57, 41 L. Ed. 2d at 951 (internal citation omitted);[1] see also Weaver v. Graham, 450 U.S. 24, 30-31, 67 L. Ed. 2d 17, 24 (1981) (“Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the [Ex Post Facto] Clause if it *688 is both retrospective and more onerous than the law in effect on the date of the offense.”). So despite the determination of the Supreme Court of the United States that the liberty interest in prison credits “has real substance” protected by the Fourteenth Amendment, the majority here holds that this interest is “de minimis.” Failing even to mention Wolff, the majority concludes that the State can continue to imprison Bobby Bowden, regardless of the number of credits he has earned to reduce his sentence, without violating the constitutional promise of due process.
The majority here can only justify characterizing defendant Bowden’s liberty interest in prison credits as de minimis — despite the Supreme Court’s explicit holding to the contrary — by inaccurately characterizing the facts found by the trial court regarding what is at' stake. As noted, the majority in Jones described the defendant’s liberty interest as his interest “in having these credits used for the purpose of calculating his date of unconditional release.” 364 N.C. at 257, 698 S.E.2d at 56. Today’s majority writes similarly. Here, however, the trial court found that the credits had already been applied to defendant Bowden’s account — and the difference between applying the earned credits, and not applying them, is the difference between freedom and incarceration. Certainly to defendant and others behind bars, this interest is anything but “de minimis.”
But my disagreement does not end with the Due Process Clause of the Fourteenth Amendment. Today’s majority also ignores the opinión of the Supreme Court of the United States in Lynce v. Mathis, 519 U.S. 433, 137 L. Ed. 2d 63 (1997). There, the Court addressed the strikingly comparable question of whether the State of Florida violated the Ex Post Facto Clause of Article I, Section 10 of the United States Constitution when it awarded early release credits to state inmates, then took those credits away. See id. at 435, 440, 137 L. Ed. 2d at 68, 72. The Court summarized the relevant facts as follows:
In 1986 petitioner pleaded nolo contendere to a charge of attempted murder and received a sentence of 22 years (8,030 days) in prison. In 1992 the Florida Department of Corrections released him from prison based on its determination that he had accumulated five different types of early release credits totaling 5,668 days. Of that total, 1,860 days were “provisional credits” awarded as a result of prison overcrowding. Shortly after *689 petitioner’s release, the state attorney general issued an opinion interpreting a 1992 statute as having retroactively canceled all provisional credits awarded to inmates convicted of murder or attempted murder. Petitioner was therefore rearrested and returned to custody. His new release date was set for May 19, 1998.
Id. at 435-36, 137 L. Ed. 2d at 68-69 (footnote call number omitted). Presented with these facts, the Court concluded unanimously that awarding such credits, and then revoking them, cannot comport with the constitutional protection against ex post facto punishment. In an opinion written by Justice Stevens, and joined in full by six other justices, the Court opined that the guarantee against increasing punishment after the fact “is only one aspect of the broader constitutional protection against arbitrary changes in the law.” Id. at 440, 137 L. Ed. 2d at 71. The Court noted further that this protection also “places limits on the sovereign’s ability to use its lawmaking power to modify bargains it has made with its subjects.” Id.
Turning to the specific issue at hand, the Court went on to hold that these dual protections against arbitrariness and compact-breaking apply to sentence reduction credits created and awarded by the State. It noted that “the operation of the 1992 statute to effect the cancellation of overcrowding credits . . . was clearly retrospective” and reasoned that this retroactivity narrowed the relevant question to “whether those consequences disadvantaged petitioner by increasing his punishment.” Id. at 441, 137 L. Ed. 2d at 72. The Court then concluded that the petitioner was disadvantaged, and central to this conclusion was the fact that the credits had already been awarded:
The 1992 statute has unquestionably disadvantaged petitioner because it resulted in his rearrest and prolonged his imprisonment. Unlike [actions taken in a previous case], the 1992 Florida statute did more than simply remove a mechanism that created an opportunity for early release for a class of prisoners whose release was unlikely; rather, it made ineligible for early release a class of prisoners who were previously eligible — including some, like petitioner, who had actually been released.
Id. at 446-47, 137 L. Ed. 2d at 75-76 (emphasis in original). Importantly, it is undisputed that here, like the defendant in Lynce, the application of the credits Bobby Bowden has already earned would provide him with no mere “opportunity,” but would entitle him to immediate release.
*690 As noted, this majority opinion of the United States Supreme Court was fully endorsed by seven justices. Justice Thomas also wrote a brief opinion, joined by Justice Scalia, concurring in part and concurring in the judgment. Critically, that opinion also confirms the central relevance of the fact that the sentence reduction credits had already been awarded:
Unlike in [a previous case], the increase in petitioner’s punishment here was neither “speculative” nor “attenuated.” Petitioner pleaded nolo contendere to a charge of attempted murder and was duly sentenced. During the period of his confinement, petitioner accumulated release credits under a state statute adopted in response to prison overcrowding. Those credits enabled petitioner to be freed from prison before his sentence (as originally imposed) had run. . . .
Under these narrow circumstances, I agree with the Court that the State’s retroactive nullification of petitioner’s previously accrued, and then used, release credits violates the Constitution’s ban on ex post facto lawmaking.... The present case involves not merely an effect on the availability oí future release credits, but the retroactive elimination of credits already earned and used. Accordingly, I concur in part and concur in the judgment.
Id. at 450-51, 137 L. Ed. 2d at 77-78 (Thomas & Scalia, JJ., concurring in part and concurring in the judgment) (emphasis in original). In light of this concurring opinion, it is clear that the Court was unanimous on this point. Today’s majority thus ignores a recent legal holding that commanded nine votes at the Supreme Court of the United States.
The import of these cases, then, is also clear: The State is under no obligation to create or to award credits that reduce a prisoner’s sentence for a crime for which he was lawfully convicted. But once it does so, it cannot then arbitrarily and with no process take those credits back. I would hold that if the State does so, it violates both the Due Process Clause of the Fourteenth Amendment and the Ex Post Facto Clause of Article I, Section 10 of the United States Constitution. These principles continue to bind this Court and we are not free to disregard them.
In my view, these cases compel this conclusion so clearly that a different outcome would be possible only if the relevant facts were different. In Jones, the facts were different. That case, like this one, involved a defendant who was a member of what has been called the Bowden-class of inmates. See, e.g., Jones, 364 N.C. at 262, 698 S.E.2d *691 at 59 (Newby, J., concurring in the result). And as here, the defendant argued that the State’s failure to apply the credits he had earned to calculate his unconditional release date was unconstitutional and violated both his right to due process and his right to be free from ex post facto punishment. See id. at 256, 698 S.E.2d at 55 (majority). In Jones, the majority rejected both arguments, based in large part on the trial court’s finding of fact that “the Department of Correction has never used good time, gain time, or merit time credits in the calculation of unconditional release dates for inmates who received sentences of life imprisonment.” Id. at 254, 698 S.E.2d at 54 (brackets and quotation marks omitted). With that finding, the defendant in Jones missed landing squarely within the holdings of the Supreme Court in Wolff and Lynce. He was held not to be entitled to release.
Here, the findings of fact are different: Judge Weeks found as fact what Judge Rand did not. For example, Judge Weeks’ order granting defendant’s Motion for Appropriate Relief included a heading titled “The Department of Correction’s historic application of Mr. Bowden’s sentence reduction credits shows: (1) Mr. Bowden received enough credits to unconditionally discharge his sentence on October 13, 2009; and (2) those credits were applied to reduce his unconditional release date.” A finding within that subsection of the order states:
Upon learning that Mr. Bowden was serving a term of years sentence, the Department of Correction applied and awarded all good, gain, and merit time sentence reduction credits previously earned by Mr. Bowden to reduce Mr. Bowden’s unconditional release date, resulting in a determination that Mr. Bowden’s sentence would expire on October 13, 2009.
A later portion of the order addresses the subsequent retraction of those awarded and applied credits. A heading in the order is explicitly titled “The Department of Correction revoked Mr. Bowden’s sentence reduction credits.” A finding of fact within that section then provides:
This Court finds that pursuant to [a memorandum issued by the Secretary of Correction], the Department of Correction revoked Mr. Bowden’s sentence reduction credits [including good, gain, and merit time credits], which had previously been awarded to him and applied to reduce his unconditional release date, and recalculated his unconditional release date such that it was reduced only by jail credits. As of the date of the entry of this Order, Mr. Bowden’s unconditional release date as posted on the “Offender Public Information” portion of the North Carolina Department of Correction website is July 23, 2055.
*692 (Footnote call number omitted.) These findings are fully supported by competent evidence in the record, as detailed in the trial court’s order and noted by the Court of Appeals. In essence, the State argues that defendant Bowden’s credits should not be treated as “applied” because credits accumulated by other inmates were not treated as “applied.” In my view, there is no plausible claim of ambiguity regarding what Judge Weeks determined based on the evidence presented in this case. The facts as found by the trial court are straightforward, and those quoted are joined by many others in the trial court’s forty-six page order.
Having carefully reviewed the trial court’s findings, I cannot avoid the conclusion that these binding facts distinguish this case from Jones and place it squarely within the purviews of Wolff and Lynce. The majority’s assertion that “[t]he DOC has never applied these credits toward the calculation of the unconditional release date of a Bowden-class inmate” is simply inconsistent with the record here. Bowden, _N.C. at _, _ S.E.2d at _. Instead of recognizing the long-standing principle that we are bound on appeal by a trial court’s findings of fact when those findings are either unchallenged or supported by competent evidence, the majority has in essence grounded its discussion in facts that it wishes the trial court had found, but did not. The majority has, at a minimum, departed significantly from our well-established approach to review of a trial court’s factual findings.
Because the binding findings here establish that sentence reduction credits were actually applied to calculate an unconditional release date for defendant, and when that finding was absent in Jones, our opinion in Jones does not compel the outcome here. And because I conclude that controlling Supreme Court precedents, applied to those findings of fact, require the release of Bobby Bowden, I would affirm the Court of Appeals and the trial court. I respectfully dissent.
Justice BEASLEY joins in this dissenting opinion.

. Wolff may have been abrogated in some respects, but not on this point. In fact, the Supreme Court has recently cited Wolff for just this proposition. See Wilkinson v. Austin, 545 U.S. 209, 221, 162 L. Ed. 2d 174, 189 (2005) (citing Wolff, 418 U.S. at OSO-SOS, 41 L. Ed. 2d at 951-52, for the proposition that there is a “liberty interest in avoiding withdrawal of state-created system of good-time credits”)). Accordingly, there is *688 no credible argument that the passage of time, or other doctrinal developments, have lessened our obligation to comply with Wolff.