CLYDE VERNON LOVETTE, Petitioner v. THE NORTH CAROLINA DEPARTMENT OF CORRECTION, ALVIN KELLER in his capacity as Secretary of Correction, and RUDY FOSTER in his capacity as Administrator of Dan River Prison Work Farm, Respondents

CHARLES LYNCH, Petitioner v. THE NORTH CAROLINA DEPARTMENT OF CORRECTION, ALVIN KELLER in his capacity as Secretary of Correction, and TIM KERLEY in his capacity as Administrator of Catawba Correctional Center, Respondents

No. COA11-1081

(Filed 21 August 2012)

## 1. Sentencing—life imprisonment—prior statute

In an action involving the release date for inmates sentenced to life imprisonment under a prior statute, the trial court did not err by concluding that it was bound by *Jones v. Keller*, 364 N.C. 249, but then differentiating petitioners from the limited scope of the *Jones* decision. The Supreme Court went to great lengths to distinguish the *Jones* defendants (serving life sentences for first-degree murder) from other defendants serving life terms under N.C.G.S. § 14-2.

**2. Judges—change by subsequent judge—sentencing determination**

The trial court did not change determinations by other superior courts when it held that petitioners, sentenced to life imprisonment under N.C.G.S. § 14-2, were serving sentences statutorily set at 80 years and had unconditional release dates to which credits should be applied.

**3. Constitutional Law—separation of powers—sentencing determination**

The trial court did not violate the separation of powers doctrine by ordering the unconditional release of inmates imprisoned for life under a statute that defined "life" as 80 years where those prisoners had credits toward their release date.

Judge ERVIN dissenting.

Appeal by respondents from order entered 16 June 2011 by Judge Allen Baddour in Wake County Superior Court. Heard in the Court of Appeals 25 January 2012.

*Sarah Jessica Farber, Vernetta Alston, and Mary S. Pollard for petitioners-appellees.*

*Roy A. Cooper, Attorney General, by Special Deputy Attorney General Thomas J. Pitman and Assistant Attorney General Elizabeth F. Parson, for respondents-appellants.*

BRYANT, Judge.

Where the trial court held that petitioners had fully served their life sentences after credits had been applied to their unconditional release dates, we affirm the trial court's order.

*Facts and Procedural History*

Clyde Vernon Lovette and Charles Lynch (petitioners) were both inmates of the North Carolina Department of Correction (hereinafter "DOC") system, serving sentences of life imprisonment. On 15 October 2010, petitioners filed applications for writs of habeas corpus commanding respondents, the DOC, Alvin Keller in his capacity as Secretary of the DOC, Rudy Foster in his capacity as Administrator of Dan River Prison Work Farm, and Tim Kerley in his capacity as Administrator of Catawba Correctional Center, to grant them uncon-

ditional release from prison. Petitions for writ of habeas corpus were simultaneously filed for thirteen other inmates.

Petitioners were each sentenced to life imprisonment pursuant to former N.C. Gen. Stat. § 14-2 (1974) which provided that a life sentence should be considered as imprisonment for eighty years.[1] Petitioners alleged that while incarcerated in the DOC, they had earned sentence reduction credits for "gain time," "good time," and "meritorious service." Based on these credits as well as days actually served, petitioners alleged that they had served their entire sentences and were entitled to be discharged from incarceration pursuant to N.C. Gen. Stat. § 17-33(2) (2010) (allowing for summary proceedings pursuant to a writ of habeas corpus).

On 6 December 2010, respondents filed motions to deny petitioners' applications for writ of habeas corpus. Petitioners filed a Joint Motion for Summary Judgment on their applications for writ of habeas corpus as well as a Joint Response in Opposition to [respondents'] Motion to Dismiss petitioners' applications for writ of habeas corpus.[2]

Following a hearing on the parties' motions held on 14 February 2011, the trial court denied summary judgment to both parties and denied respondents' Motion to Deny Application for Writ of Habeas Corpus.

Subsequent to a second hearing, on 15 April 2011, the trial court joined petitioners' applications for hearing and concluded the following: "Given the stipulation that Petitioners' total credits, if applied to the unconditional release date, are sufficient to fully satisfy each Petitioners' sentence, the Petitioners have fully served their sentences" and therefore the "continued detention of Petitioners is unlawful." The trial court allowed the writs of habeas corpus and ordered petitioners to be discharged by 17 June 2011.

Respondents filed with this Court a petition for writ of certiorari, a motion for supersedeas, and a motion for temporary stay. On 24 June 2011, our Court issued a writ of certiorari to review the 16 June

---

1. Petitioner Lovette was charged with a first-degree murder that was committed in 1978 but plead guilty to second-degree murder. Petitioner Lynch was charged with two counts of second-degree burglary and one count of assault with intent to commit rape, offenses that were committed in 1978. Lynch's charges were consolidated and a single life sentence was imposed for second-degree burglary.

2. While titled "Joint Response in Opposition to Motion to Dismiss," petitioners' motion was in direct response to respondents' 6 December 2010 "Motion to Deny Application for Writ of Habeas Corpus."

2011 order, allowed the petition for writ of supersedeas, and stayed the 16 June 2011 order pending disposition of respondents' appeal.

---

Respondents' sole issue on appeal is whether the trial court erred by ordering petitioners' unconditional release from prison.

[1] Respondents argue the trial court erred by concluding that it was bound by the decision in *Jones v. Keller*, 364 N.C. 249, 698 S.E.2d 49 (2010), but ignoring the reasoning of *Jones*. While the trial court's findings of fact are binding on appeal if supported by competent evidence, the trial court's conclusions of law are reviewable *de novo*. *State v. Barber*, 335 N.C. 120, 130, 436 S.E.2d 106, 111 (1993).

In the 16 June 2011 order, the trial court made the following pertinent conclusions of law:

1. This Court is bound by the holding in *Jones v. Keller*, 364 N.C. 249; 698 S.E.2d 49 (2010), (hereinafter, "*Jones*"), which was decided by the North Carolina Supreme Court subsequent to the decision by the North Carolina Court of Appeals in *Bowden*.

2. The *Jones* decision clearly and on its face limited its decision to inmates serving life sentences for first-degree murder between 8 April 1974 and 30 June 1978 (*See Jones at 252*: "it is this limited group that we consider in this opinion").

3. This Court now considers Petitioners, two inmates that are part of a distinguishable subset of the *Bowden* class, different than those considered in *Jones*: those who were sentenced to life imprisonment between 8 April 1974 and 30 June 1978 based on lesser convictions, for crimes other than first-degree murder.

In *State v. Bowden*, 193 N.C. App. 597, 668 S.E.2d 107 (2008), the defendant was convicted of two counts of first-degree murder and sentenced to two life sentences in 1975, at a time where N.C. Gen. Stat. § 14-2 (1974) provided that a life sentence should be considered as imprisonment for 80 years. *Id.* at 597-98, 668 S.E.2d at 108. The *Bowden* defendant filed a petition for a writ of *habeas corpus* and argued that after applying all of his sentence reduction credits, he had completed his 80-year sentence and was entitled to immediate release from prison. *Id.* The trial court denied his petition and the *Bowden* defendant appealed to this Court. We treated the matter as a motion for appropriate relief, vacated the trial court's order, and remanded the matter, ordering the trial court to conduct an evidentiary hearing to resolve issues of fact raised in the defendant's petition. Later, the

trial court denied defendant's claim for relief and concluded that N.C.G.S. § 14-2 (1974) only required the DOC to treat the defendant's life sentence as a term of 80 years for purposes of parole eligibility. *Id.* at 598, 668 S.E.2d at 108.

The State asserted that N.C.G.S. § 14-2 did not govern the length of the defendant's sentence in prison but only applied when determining his eligibility for parole and that a life sentence deemed a person to be imprisoned for the term of his natural life. *Id.* at 599, 668 S.E.2d at 109. Our Court concluded the following:

> The plain language of the statute states that life imprisonment shall be considered as a sentence of imprisonment for a term of 80 years in the State's prison without any limitation or restriction. . . . Had our Legislature intended that N.C. Gen. Stat. § 14-2 (1974) only apply when determining a prisoner's parole eligibility, it would have been a simple matter to have included that explicit phrase.

*Id.* at 601, 668 S.E.2d at 110 (citations omitted). Accordingly, our Court reversed the trial court's order and remanded for a hearing to determine defendant's sentence reduction credit eligibility and to whom those credits would apply. *Id.*

Subsequent to *Bowden*, in *Jones v. Keller*, 364 N.C. 249, 698 S.E.2d 49 (2010), the North Carolina Supreme Court was asked to determine whether the defendant was entitled to habeas corpus relief on the grounds that once his good time, gain time, and merit time were credited toward his life sentence, statutorily defined as eighty years, he was entitled to unconditional release. *Id.* at 251, 698 S.E.2d at 52. Earlier, the trial court had concluded that because the *Jones* defendant was entitled to credits awarded by the DOC, had served the entirety of his sentence, and was entitled to relief, his petition for habeas corpus should be allowed and ordered that the *Jones* defendant be released. The DOC appealed to the North Carolina Supreme Court which allowed DOC's motion for temporary stay and granted its petition for writ of certiorari. *Id.*

The DOC "assert[ed] that it never considered that [its] regulations applied to [the defendant] Jones or other inmates similarly situated for the purpose of calculating an unconditional release date." *Id.* at 258, 698 S.E.2d at 57. The Supreme Court noted that although DOC's regulations defined good time, gain time, and merit time as "[t]ime credits applied to an inmate's sentence that reduce[] the amount of time to be served[,]" these credits were not to be used to calculate an

unconditional release date. *Id.* at 258, 698 S.E.2d at 56. Accordingly, the trial court's judgment was reversed with the North Carolina Supreme Court specifically stating that

> [i]n light of the compelling State interest in maintaining public safety, we conclude that these regulations do not require that DOC apply time credits for purposes of unconditional release to those *who committed first-degree murder during the 8 April 1974 through 30 June 1978 time frame and were sentenced to life imprisonment.*

*Id.* at 258, 698 S.E.2d at 57 (emphasis added). The *Jones* court emphasized the fact that the State's "interest in ensuring public safety [was] particularly pronounced when dealing with those convicted of first-degree murder." *Id.* at 257, 698 S.E.2d at 56 (citations omitted).

Based upon the language of the *Jones* court, the trial court in the instant case concluded that it was bound by the *Jones* decision regarding the application of time credits for purposes of unconditional release to those convicted of first-degree murder. Further, the trial court concluded that petitioners were distinguishable from the *Jones* defendant and distinguishable from the limited group the *Jones* decision addressed. The *Jones* decision only applied to inmates who committed first-degree murder during the time period from 8 April 1974 through 30 June 1978 and were subsequently sentenced to life imprisonment for first-degree murder. In the case before us, petitioners were sentenced to life imprisonment during the relevant time period but were convicted of lesser crimes than first-degree murder: Lovette for second-degree murder; and Lynch for second-degree burglary.

Considering both *Bowden* and *Jones*, we cannot say the trial court erred by concluding that petitioners were "part of a distinguishable subset of the *Bowden* class, different than those considered in *Jones*[.]" Like the trial court, we think the Supreme Court went to great lengths to distinguish the *Jones* defendants—those who committed first-degree murder and were sentenced to life imprisonment for first-degree murder—from other defendants serving life terms under N.C.G.S. § 14-2 (1974). Petitioners were serving life sentences statutorily set at eighty years with unconditional release dates to which credits could be applied. Therefore, the trial court did not err by concluding it was bound by the *Jones* decision but then differentiating the petitioners from the limited scope of the *Jones* decision.

**[2]** Next, respondents contend the trial court could not alter the effect of sentences imposed on petitioners as it changed the determinations made by other superior courts. Specifically, respondents argue that "[t]he trial court's order erroneously overlooks that terms of years sentences were provided by statute for the crimes committed by [petitioners], but the sentencing courts imposed life sentences." Respondents' argument is misplaced.

The trial court held that "[p]etitioners, though sentenced to terms of life imprisonment, were actually serving sentences statutorily set at eighty years. . . [and] like others serving sentences of a determinate length, had unconditional release dates to which credits should be applied." As stated above, petitioners were sentenced to life imprisonment under former N.C.G.S. § 14-2 (1974), which provided that a life sentence should be considered as imprisonment for eighty years. The trial court did not change the sentences imposed on petitioners, but rather, the trial court held that credits should be applied to their unconditional release dates, like similar prisoners who were serving sentences of a determinate length.

**[3]** Last, respondents argue the 16 June 2011 order violated the separation of powers doctrine "by invading the provinces of the legislative and executive branches." By ordering petitioners' unconditional release, respondents' argue that the trial court "usurped the authority of the legislature in (i) providing for parole for their life sentences and (ii) delegating to the Parole Commission sole authority in this matter." Respondents also argue that the trial court usurped the authority of the executive branch by preventing the Governor from pardoning or commuting petitioners' sentences by preventing the Parole Commission from exercising its discretionary authority regarding parole. The trial court's order applied credits to petitioners' unconditional release dates, holding that petitioners had fully served their sentences. This ruling of the trial court, which is upheld, that petitioners are entitled to unconditional release by operation of law, does not violate the separation of powers doctrine.

Based on the foregoing, the trial court's order is affirmed.

Judge ELMORE concurs.

Judge ERVIN dissents in separate opinion.

ERVIN, Judge, dissenting.

After a careful review of the record in light of the applicable law, I am compelled to conclude, contrary to the result reached by my colleagues, that the trial court's order should be reversed. Simply put, I believe that we are required to utilize the analysis employed by the Supreme Court in *Jones v. Keller*, 364 N.C. 249, 255-60, 698 S.E.2d 49, 54-58 (2010), *cert. denied*, _____ U.S. _____, 131 S. Ct. 2150, 179 L. Ed. 2d 935 (2011), based upon the facts of this case in determining whether Petitioners are entitled to have their earned time credits utilized in calculating their unconditional release date, a step which the Court fails to take. After conducting an analysis of the type employed in *Jones*, I conclude that Petitioners are not entitled to have their earned time credits applied against their sentences for purposes of calculating their unconditional release date and respectfully dissent from the Court's decision to affirm the trial court's order.

## I. Factual Background and Trial Court's Order

As I understand the record, Petitioner Lovette was convicted of second degree murder and Petitioner Lynch was convicted of second degree burglary. Petitioners were both sentenced to life imprisonment pursuant to former N.C. Gen. Stat. § 14-2 (1974), which provided that a life sentence should be considered as imprisonment for a term of eighty years. In their petitions, Petitioners have alleged that, while incarcerated, they earned sufficient credits for "gain time," "good time," and "meritorious service" to entitle them to unconditional release from their confinements. According to Petitioners, the DOC's refusal to utilize these earned time credits in calculating their unconditional release dates violated their rights to due process and equal protection, constituted an *ex post facto* clause violation, and contravened fundamental notions of separation of powers. After holding a hearing, the trial court entered an order in which it found facts in accordance with the undisputed record evidence and concluded as a matter of law that:

1. This Court is bound by the holding in [*Jones*], which was decided by the North Carolina Supreme Court subsequent to the decision by the North Carolina Court of Appeals in [*State v.*] *Bowden*[, 193 N.C. App. 597, 668 S.E.2d 107 (2008), *disc. review improvidently granted*, 363 N.C. 621, 683 S.E.2d 208 (2009).]

2. The *Jones* decision clearly and on its face limited its decision to inmates serving life sentences for first-degree murder

between 8 April 1974 and 30 June 1978 (*See Jones* at 252: "it is this limited group that we consider in this opinion").

3. This Court now considers Petitioners, two inmates that are part of a distinguishable subset of the *Bowden* class, different than those considered in *Jones*: those who were sentenced to life imprisonment between 8 April 1974 and 30 June 1978 based on lesser convictions, for crimes other than first-degree murder.

4. The controlling statute then in effect is the same as that in the *Jones* case, and it provides that a "sentence of life imprisonment shall be considered as a sentence of 80 years in the State's prison." [N.C. Gen. Stat. §] 14-2 (Cum. Supp. 1974).

5. Therefore, the term of imprisonment for all *Bowden*-class inmates is clear: it is a term of eighty years. The question before this Court, as it was in *Jones*, is the application or administration of that sentence by DOC.

6. The only material difference in the cases at bar and the *Jones* case is that Jones's life sentence was based upon a conviction for first-degree murder, whereas the Petitioners were convicted of lesser charges.

7. The *Jones* analysis of DOC regulations, under the doctrine of separation of powers, defers to the administrative agency's interpretation of its own rules. DOC has the power to create rules and regulations governing inmates, including the awarding of various types of credit. "DOC's application of its own regulations to accomplish these ends is 'strictly administrative' and outside the purview of the courts." (citations omitted, *Jones* at 255).

8. *Jones*, however, goes on to say that "DOC does not have carte blanche." (*Jones* at 254.)

9. The due process rights of the inmates in the case at bar are limited; but indeed, a liberty interest has been created by DOC in its promulgation of rules and regulations regarding various credits available to inmates, as well as the application of credits for specific purposes.

10. Petitioners['] liberty interests in having good time, gain time, and merit time used for purposes of calculating a date of unconditional release is no longer de minimis when compared to the State's compelling interest in keeping inmates

incarcerated until they can be safely released. While the Court in *Jones* determined that a specific class of *Bowden* inmates (those sentenced to life on a conviction of first-degree murder) had only a de minimis liberty interest, there can be no other reason for limiting its decision to that class other than a recognition that other inmates serving life sentences for lesser crimes have an elevated liberty interest, one that soars above the minimal interest set forth in *Jones*.

11. Additionally, the *Jones* court clearly saw a weighty State interest in protecting the public from those convicted of first-degree murder, quoting with approval several North Carolina and United States Supreme Court cases. Compare, e.g., "this most serious crime," and "defendants who do not kill . . . are categorically less deserving of the most serious forms of punishment." (citations omitted, *Jones* at 257-8).

12. On balance, Petitioners' liberty interest is anything but de minimis, and that significant liberty interest outweighs an important, but far less compelling, State interest in protecting the public from inmates who long ago committed crimes that, though horrific, fall far short of first-degree murder under any rational measure.

13. With regards to Petitioners' equal protection claims, the analysis applied by the *Jones* court again leads to a different result.

14. In *Jones*, the Supreme Court, applying the appropriate rational basis standard, determined that a person serving a sentence for first-degree murder presents a greater threat to society than inmates convicted of other offenses, and thus DOC has a rational basis to decline to award credit for purposes of conditional release, "even though these same credits have been awarded for that purpose to other prisoners with determinate sentences." (*Jones* at 260).

15. The *Jones* Court on multiple occasions went to great length to differentiate the public safety concerns of the State as they relate to first-degree murderers, as opposed to those who commit any other crimes. Petitioners' convictions are, of course, for second-degree murder and second-degree burglary. Nowhere in its opinion does the *Jones* court allow for the possibility that other classes of crimes may rise to the same level of concern for public safety as first-degree mur-

der. It is clear that the equal protection analysis undertaken in *Jones* leads to a different result for Petitioners.

16. Petitioners were convicted of crimes that, since at least 1995, carry determinate sentences. Many, if not most, defendants convicted of these same crimes, even at the time Petitioners were convicted, received sentences of determinate length. These other defendants, therefore, had good time, gain time, and merit time credits applied to their cases for purposes of unconditional release. Petitioners, though sentenced to terms of life imprisonment, were actually serving sentences statutorily set at eighty years. Petitioners, like others serving sentences of a determinate length, had unconditional release dates to which credits should be applied. Therefore, there is no rational basis for DOC to refuse to apply these credits to Petitioners.

17. In light of the liberty interest of Petitioners, and of the denial of equal protection of Petitioners, or either standing alone, this Court finds that DOC regulations do require DOC to apply all time credits (good time, gain time, and merit time) for purposes of unconditional release of Petitioners.

18. Given the stipulation that Petitioners' total credits, if applied to the unconditional release date, are sufficient to fully satisfy each Petitioner['s] sentence, the Petitioners have fully served their sentences.

19. The court finds that no law or regulation has retroactively altered the sentence reduction credits of Petitioners, and therefore, no ex post facto violations have occurred.

20. The continued detention of Petitioners is unlawful.

Based upon these findings and conclusions, the trial court ordered that Petitioners be unconditionally discharged from imprisonment on 17 June 2011. Respondents noted an appeal to this Court from the trial court's order, contending that the trial court (1) ignored the reasoning utilized in *Jones* in determining that Petitioners' due process and equal protection rights had been violated; (2) impermissibly changed the determinations that had been made by the original sentencing courts; and (3) violated the separation of powers doctrine.

## II. *Jones*

Although the Court correctly recognizes that we are bound by *Jones*, *State v. Davis*, 198 N.C. App. 443, 447, 680 S.E.2d 239, 243 (2009) (acknowledging that the Court of Appeals must follow Supreme Court precedent), it states that "the Supreme Court went to great lengths to distinguish the *Jones* defendants—those who committed first-degree murder and were sentenced to life imprisonment for first-degree murder–from other defendants serving life terms under [N.C. Gen. Stat.] § 14-2 (1974)" and holds, based on that determination, that the trial court correctly concluded that Petitioners were "part of a distinguishable subset of the *Bowden* class, different than those considered in *Jones*[.]" After reaching this conclusion, however, my colleagues have failed to take what strikes me as the next step logically required by *Jones*, which is to utilize the analytical approach adopted in *Jones* for the purpose of determining whether the same constitutional arguments that were deemed insufficient with respect to individuals convicted of first degree murder in *Jones* are sufficient to require the unconditional release of individuals convicted of offenses other than first degree murder. After independently examining the record before the Court in this case using the analytical framework set out in *Jones*, I feel compelled to conclude that the trial erred by ordering that the Petitioners be unconditionally released.

In *Jones*, the Supreme Court examined whether the DOC's refusal to utilize earned time credits for the purpose of calculating the petitioner's unconditional release date violated his constitutional rights to due process and equal protection. 364 N.C. at 255-60, 698 S.E.2d at 54-58. As both the trial court and my colleagues have recognized, the only significant difference between the present case and *Jones* is that *Jones* dealt with an inmate who had been sentenced to life imprisonment for first degree murder pursuant to former N.C. Gen. Stat. § 14-2, while Petitioners were sentenced to life imprisonment under that statute for other offenses. Given that *Jones* addressed the same constitutional claims that have been raised in this case, with the only difference being the identity of the crimes for which the individual inmates were convicted, I believe that we are required to follow the analysis delineated in *Jones* in order to determine whether Petitioners are entitled to unconditional release from incarceration. In other words, I do not believe that the fact that this case and *Jones* involve individuals convicted of different offenses, without more, provides an adequate basis for affirming the trial court's order.

### A. Statutory Authority Concerning "Earned Time Credits"

Before addressing the petitioner's constitutional claims in *Jones*, the Supreme Court considered whether "DOC's administration of good time, gain time, and merit time credits [was] within the statutory authority delegated [to] it by the General Assembly." 364 N.C. at 255, 698 S.E.2d at 54. In undertaking that analysis, the Supreme Court recognized that, "implicit in DOC's power to allow time for good behavior . . . is [the] authority to determine the purposes for which time is allowed" and the "[d]iscretion to determine [whether] the purposes for which time is awarded is consistent with such DOC goals as assuring that only those who can safely return to society are paroled or released and that they have been suitably prepared for outside life." *Id.* at 255, 698 S.E.2d at 55. Based on that logic, the Supreme Court concluded that the manner in which DOC applied its own regulations was " 'strictly administrative' " and consistent with the agency's statutory authority. *Id.*

### B. Due Process

In order to analyze the petitioner's substantive constitutional claims, the Supreme Court first considered whether the DOC's "interpretation and implementation of its regulations" violated the petitioner's due process rights, with the Court's analysis focusing upon the petitioner's liberty interest in the earned time credits created by the DOC's regulations. *Jones*, 364 N.C. at 256, 698 S.E.2d at 55. At the beginning of its analysis, the Supreme Court discussed the parameters of the petitioner's liberty interest and stated that:

> [w]hen a liberty interest is created by a State, it follows that the State can, within reasonable and constitutional limits, control the contours of the liberty interest it creates. In other words, the liberty interest created by the State through its regulations may be limited to those particular aspects of an inmate's incarceration that fall within the purview of those regulations. DOC has interpreted its regulations as permitting the award of different types of time credits for certain purposes and has, in fact, awarded those credits to [the petitioner] for those purposes. On the record before this Court, DOC has taken no action against [the petitioner] for punitive reasons. Because [the petitioner] has received the awards to which he is entitled for the purposes for which he is entitled, he has not been denied credits in which he has a constitutionally protected liberty interest.

*Id.* at 256-57, 698 S.E.2d at 55-56. The Supreme Court then addressed the petitioner's contention that his earned time credits should have been applied in calculating his unconditional release date by weighing his liberty interest, if any, in having his earned time credits utilized to calculate his unconditional release date against the State's interest in "keeping inmates incarcerated until they [could] be released with safety to themselves and to the public[,]" concluding that, while the petitioner's liberty interest was *de minimis*, the State's interest was compelling. *Id.* at 257, 698 S.E.2d at 56. As part of this process, the Supreme Court noted that the petitioner was eligible for parole and had received annual parole reviews without having been released by the North Carolina Parole Commission. *Id.* Thus, the Supreme Court concluded that the petitioner had "received the · process that [was] due him as an inmate eligible for parole, when the State's corresponding interest, [was] assuring that inmates [were] safely released under supervision." *Id.* Finally, the Supreme Court stated that:

> [a]ssuming without deciding that DOC's procedures for determining parole adequately protect an inmate's due process rights to consideration for parole, those procedures [were] also adequate to preserve [the petitioner's] constitutional rights while still permitting the State to withhold application of [the petitioner's] good time, gain time, and merit time to the calculation of a date for his unconditional release. He ha[d] no State[]created right to have his time credits used to calculate his eligibility for unconditional release. [The petitioner's] due process rights [were] not . . . violated.

*Id.*

Although my colleagues correctly noted that Petitioners in this case, unlike the petitioner in *Jones*, have been convicted of offenses other than first degree murder, I am unable to read *Jones* as establishing that first degree murder convictions represent the only occasions in which the State's interest in public safety is so compelling as to outweigh any liberty interest that an individual sentenced to life imprisonment pursuant to former N.C. Gen. Stat. § 14-2 based upon a conviction for an offense other than first degree murder might have in being awarded earned time credits for the purpose of calculating an unconditional release date. Although the Supreme Court did recognize that the issue before the Court in *Jones* involved the treatment of individuals who had been sentenced to life imprisonment for first degree murder pursuant to former N.C. Gen. Stat. § 14-2, nothing in

*Jones* suggests to me that the Supreme Court intended that the outcome would necessarily be different in a case involving individuals who had been sentenced to life imprisonment pursuant to former N.C. Gen. Stat. § 14-2 based upon convictions for offenses other than first degree murder. On the contrary, it seems to me that we are required to conduct the same analysis utilized in *Jones* in light of any differences between the facts at issue in that case and those at issue here in order to determine whether a different outcome than that reached with respect to individuals convicted of first degree murder in *Jones* should be reached here.

After conducting an analysis like that employed in *Jones*, I am unable to avoid reaching the conclusion that Petitioners "h[ave] not been denied credits in which [they] have a constitutionally protected liberty interest." 364 N.C. at 257, 698 S.E.2d at 56. As I have previously noted, the Supreme Court has indicated that the State may create a liberty interest available to incarcerated individuals by adopting regulations such as those providing for earned time credits of the type at issue here. *Jones*, 364 N.C. at 256, 698 S.E.2d at 55. However, the Supreme Court expressly stated in *Jones* that this liberty interest has a limited scope given the State's ability, "within reasonable and constitutional limits, [to] control the contours of the liberty interest it creates." *Id.* at 256, 698 S.E.2d at 56. Put another way, earned time credits created by DOC regulation "may be limited to those particular aspects of [Petitioners'] incarceration that fall within the purview of those regulations." *Id.* at 257, 698 S.E.2d at 56. In the present case, as in *Jones*, while acknowledging that Petitioners had accumulated earned time credits, the DOC contends that the credits were not intended to be applied to reduce the time to be served on Petitioners' sentences. As the stipulations between the parties reflect (1), "[b]ecause Petitioners were sentenced under pre-Fair Sentencing law, their sentences were shown in their combined inmate records as "LIFE," and no credits were applied by DOC to calculate unconditional release dates for them[,]" and (2):

> DOC has never applied either good time or gain and merit time to calculate an unconditional release date for inmates sentenced to or serving life sentences, regardless of whether the inmates were sentenced under pre-Fair Sentencing law or the Fair Sentencing Act or regardless of the crime of which the inmate was convicted. For such inmates, DOC applied good time credits only for the purpose of shortening the time required to be served to become eligible for parole consideration and the time required to be

LOVETTE v. N.C. DEP'T OF CORR.

[222 N.C. App. 452 (2012)]

served to become eligible for promotion to minimum custody, the least restrictive DOC custody status. By contrast, DOC applied good time and gain or merit time in the event the Governor commuted a life sentence to a term of years' sentence.

As a result, given that the "DOC has interpreted its regulations as permitting the award of different types of time for certain purposes and has, in fact, awarded those credits to [Petitioners] for those purposes . . . [Petitioners have] received the awards to which [they] are entitled for the purposes for which [they] are entitled," *Id.*, and have not, under the logic set out in *Jones*, been deprived of a constitutionally protected liberty interest.[1]

In addition, even if we were to address Petitioners' due process claims by weighing, as the Supreme Court did in a separate portion of its *Jones* opinion, their liberty interest, "if any, . . . [against] the State's compelling interest in keeping inmates incarcerated until they can be released with safety to themselves and to the public[,]" I would still feel compelled to conclude that no due process violation has occurred in this case. *Id.* at 257, 698 S.E.2d at 56.

A careful reading of *Jones* indicates that the weighing analysis discussed by the Supreme Court rested upon determinations that (1) the liberty interest, if any, that had been created by the DOC's provisions providing for "earned time credits" was relatively minimal; (2) the State's interest in keeping inmates incarcerated until their release posed no danger to the public was compelling; and (3) the fact that the petitioners were eligible for parole, sufficed "to preserve [his] constitutional rights while still permitting the State to withhold application of [his] good time, gain time, and merit time [from] the calculation of a date for [his] unconditional release." *Id.* Although the Supreme Court certainly emphasized the particularly heinous nature of the conduct needed to establish an individual's guilt of first degree murder in conducting the balancing test described in *Jones*, I do not see anything in the Supreme Court's opinion that suggests that the outcome would necessarily be different in the event that this same analysis were conducted in a case involving individuals convicted of something other than first degree murder. For that reason, even

1. In their brief, Petitioners contend that "the Supreme Court found that DOC could limit the purpose of [the petitioner's] sentence reduction credits due to the fact that [his] liberty interest in those credits was different than that of other inmates because he committed first-degree murder." I am unable, however, to read *Jones* as suggesting that the discussed determination in the text was limited to situations in which the petitioner had been sentenced to life imprisonment for first degree murder.

though the State's public safety interest may be less pronounced in this case than in a case involving an individual convicted of first degree murder, that fact does not necessarily mean that the incarcerated individual's limited interest in having earned time credits applied to his or her unconditional release date outweighs the State's public safety interest. As a result, we must replicate the *Jones* analysis based on the differing facts at issue here in order to determine whether to evaluate the validity of the trial court's due process decision.

The Supreme Court's determination that a prisoner's interest, if any, in the use of earned time credits to calculate a prisoner's unconditional release date is relatively minimal does not appear to me to hinge on the nature of the offense which led to his or her incarceration. For that reason, the liberty interest upon which Petitioners rely must, under *Jones*, be deemed minimal. In addition, although the offenses for which Petitioners are currently incarcerated are not as heinous as first degree murder, second degree burglary and second degree murder are very serious offenses that involve significant public safety implications. Finally, as was the case with respect to the convicted first degree murderers at issue in *Jones*, Petitioners were "eligible for parole . . . [,] had received annual [or three year] parole reviews, [and] the Parole Commission [had] consistently . . . declined to parole [them]." 364 N.C. at 257, 698 S.E.2d at 56. For that reason, as in *Jones*, the protections afforded to Petitioners were "adequate to preserve [Petitioners'] constitutional rights while still permitting the State to withhold application of [Petitioners'] good time, gain time, and merit time to the calculation of a date for [their] unconditional release." *Id.* at 257, 698 S.E.2d at 56. As a result, given that the significant public safety concerns associated with the offenses for which Petitioners were convicted coupled with the adequacy of Petitioners' parole-related rights outweigh the minimal liberty interest that Petitioners possess in having their earned time credits utilized to calculate their unconditional release dates, I would hold that the trial court erred by concluding that Petitioners' liberty interests "[were] anything but de minimis;" that "th[ose] significant liberty interests outweigh[ed] an important, but far less compelling, State interest in protecting the public from inmates who long ago committed crimes that, though horrific, f[e]ll far short of first-degree murder under any rational measure;" and that Petitioners' due process rights were violated.

## C. Equal Protection

The trial court also concluded that the DOC's refusal to credit Petitioners' "earned time credits" for the purpose of calculating their

unconditional release date constituted an equal protection violation. The trial court reached this conclusion on the grounds that (1) *Jones* made a sharp distinction between the public safety concerns that would be triggered by the release of individuals sentenced to life imprisonment pursuant to former N.C. Gen. Stat. § 14-2 for first degree murder and the release of individuals sentenced to life imprisonment under that statute for other offenses and (2) the fact that Petitioners would not be subject to a life sentence for second degree murder and second degree burglary under current law. In affirming the trial court's decision with respect to this equal protection issue, my colleagues rely, once again, upon their determination that the difference between a life sentence under former N.C. Gen. Stat. § 14-2 for first degree murder and a life sentence under that statute for some other offense is outcome-determinative. I do not find this reasoning persuasive.

In *Jones*, the Supreme Court rejected the petitioner's argument that those sentenced to life imprisonment for first degree murder under former N.C. Gen. Stat. § 14-2 were "serving determinate sentences differently [than] other inmates serving determinate sentences" and that the "DOC's denial of good time, gain time, and merit time for the purposes of calculating an unconditional release date violate[d] [the petitioner's] right to equal protection of the law." 364 N.C. at 259, 698 S.E.2d at 57. In analyzing the petitioner's equal protection claim, the Supreme Court began by noting that " 'equal protection of the laws is not denied by a statute prescribing the punishment to be inflicted on a person convicted of crime unless it prescribes different punishment for the same acts committed under the same circumstances by persons in like situation[s].' " *Id.* at 260, 698 S.E.2d at 57-58 (quoting *State v. Benton*, 276 N.C. 641, 660, 174 S.E.2d 793, 805 (1970)). After determining that the petitioner's claim should be subject to rational basis scrutiny, the Supreme Court stated that:

> [the petitioner] was convicted of a different crime than others serving determinate sentences under statutes other than [N.C. Gen. Stat.] § 14-2, even if the sentences of some of those others are for eighty years or even longer (perhaps due to the imposition of consecutive sentences). The fact that [the petitioner] is serving a sentence for first[]degree murder reasonably suggests that he presents a greater threat to society than prisoners convicted of other offenses.

*Id.* at 260, 698 S.E.2d at 58. As a result, the Supreme Court concluded that the "DOC ha[d] a rational basis for denying [the] petitioner good

time, gain time, and merit time for the purposes of unconditional release, even though these same credits ha[d] been awarded for that purpose to other prisoners with determinate sentences." *Id.*

At the time that their life sentences were imposed, individuals convicted of second degree murder and second degree burglary were subject to either an explicitly determinate sentence or a sentence of life imprisonment imposed pursuant to former N.C. Gen. Stat. § 14-2. As a result of the Supreme Court's determination that claims such as the one at issue here are subject to rational basis review, *Jones*, 364 N.C. at 259-60, 698 S.E.2d at 57, we are required to uphold the DOC's refusal to utilize Petitioners' earned time credits for the purpose of calculating an unconditional release date as long as that decision "bear[s] some rational relationship to a conceivable legitimate governmental interest." *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 11, 269 S.E.2d 142, 149 (1980). Although, the Supreme Court's decision in *Jones* appears to rest upon the fact that an individual "serving a sentence for first-degree murder . . . presents a greater threat to society than prisoners convicted of other offenses[,]" 364 N.C. at 260, 698 S.E.2d at 58, the fact that Petitioners were convicted of offenses less heinous than first degree murder does not necessitate the conclusion that an equal protection violation has occurred in this instance. On the contrary, given that these individuals, who could have received an explicitly determinate sentence at trial, were sentenced to life imprisonment pursuant to former N.C. Gen. Stat. § 14-2, I believe that, under the same basic logic adopted by the Supreme Court in *Jones*, we are compelled to conclude that there was a rational basis for believing that these individuals represented a greater threat to society than those sentenced to explicitly determinate sentences for the same offenses.

In addition, I do not believe that the fact that Petitioners would not be subject to sentences of life imprisonment under current law has any bearing on the equal protection analysis that should be employed in order to decide this case. As the General Assembly stated in repealing former N.C. Gen. Stat. § 14-2:

> [t]his act becomes effective October 1, 1994, and applies only to offenses occurring on or after that date. Prosecutions for, or sentences based on, offenses occurring before the effective date of this act are not abated or affected by the repeal or amendment in this act of any statute, and the statutes that would be applicable to those prosecutions or sentences but for the provisions of this act remain applicable to those prosecutions or sentences.

Ch. 24, Sec. 14, 1993 N.C. Sess. Laws (Extra Sess. 1994) at 96. As the Supreme Court has recognized, the General Assembly has the authority to change the sentences applicable to particular criminal offenses on a prospective basis, with the judicial branch having the obligation to apply the revised sentencing legislation consistently with the effective date provisions enacted by the General Assembly. *State v. Whitehead,* ___ N.C. ___, ___, 722 S.E.2d 492, 495 (2012). As a result of the fact that the legislation repealing former N.C. Gen. Stat. § 14-2 expressly left existing sentences undisturbed and the fact that such a change in the applicable sentencing statutes does not result in the imposition of differing sentences for the same conduct under the same circumstances, I am unable to see how the enactment of the existing sentencing statutes has any bearing on the constitutional analysis that we are required to undertake in this case. As a result, I would hold that the trial court erred by concluding that Petitioners have been deprived of their right to the equal protection of the laws by virtue of the DOC's refusal to utilize their earned credits in calculating their unconditional release dates.[2]

### III. Conclusion

Thus, although I agree with my colleagues that *Jones* controls the outcome in the present case, I believe that a proper understanding of *Jones* requires us to conduct an independent analysis of the specific facts underlying Petitioners' claims in order to determine the validity of the trial court's order. After conducting such an analysis, I am compelled to conclude that Petitioners' constitutional rights to due process and equal protection have not been violated by the DOC's refusal to utilize their earned time credits in calculating their unconditional release dates. As a result, I believe that we should reverse the trial court's order and respectfully dissent from the Court's decision to the contrary.

---

2. Because the trial court's decision to order Petitioners' unconditional release rested exclusively upon due process and equal protection considerations, I see no need to address the DOC's remaining challenges to the trial court's order.